## EDWARD ARNOLD MOSS *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 291, September Term, 1975.]

*Decided June 25, 1976.*

The cause was argued before MORTON, POWERS and MELVIN, JJ.

*John H. Harman, Assigned Public Defender,* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Judith R. Catterton, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

This proceeding grew out of a series of indictments in Montgomery County against Edward Arnold Moss. He pleaded guilty to two separate offenses of armed robbery and to one offense of escape. On 31 October 1973 the court imposed consecutive sentences of 10 years, three years, and two years. On 6 November 1973 the court entered an order that Moss be delivered to the Patuxent Institution for examination "to determine whether he is a defective delinquent". Art. 31B, § 6.

The appeal now before us is from a finding and order of the Circuit Court for Montgomery County that Moss "be returned to the Patuxent Institution for confinement as a defective delinquent for an indeterminate period without either maximum or minimum limits." The order was entered by the court after a hearing before a jury which found, by its verdict, that Moss was a defective delinquent. Code, Art. 31B, §§ 8 (c) and 9 (b).

Moss then filed an application in this Court for leave to appeal. Art. 31B, § 11. We granted leave to appeal, and the case was transferred to our regular appeal docket. Briefs were filed on behalf of Moss as appellant and on behalf of the Director, Patuxent Institution as appellee. The appeal was heard on oral argument.

The questions presented in this appeal are:

1. Whether the delay between the Staff Report and the initial hearing was a violation of due process and Article 31B, Section 8 (a) and/or such as to prejudice the rights of the Appellant.
2. Whether the delay between Appellant's commitment to Patuxent and his trial was so great that it denied the Appellant due process of law.
3. Whether the Court erred and abused its discretion in refusing to instruct the jury as requested in Appellant's Instruction No. 9 that if the Appellant were found not to be a defective delinquent he would be transferred to the Department of Correction to serve out the remainder of his sentence.
4. Whether the Court erred and abused its discretion in the refusal of the Judge to disqualify himself from the case.

Lapse of Time and Due Process

We shall combine our consideration of Questions 1 and 2, and discuss the intervals of time on a step by step basis.

A written report addressed to the court, sent on 21 March 1974, stated the findings and opinion of the Diagnostic Staff of Patuxent Institution that Moss met the criteria for being a defective delinquent. Art. 31B, § 7 (a). The report shows that Moss was received at Patuxent for examination on 26 December 1973, so it is clear that the report was made in less than one half the six months which § 7 (a) allows for the report.

The delay following Patuxent's report raises the principal issue in this appeal. Art. 31B, § 8 (a) provides:

"If the institution for defective delinquents in its report on any person shall state that he is a defective delinquent, the court shall forthwith summon the person before it and advise him of the substance of the report and of the pendency of the hearing hereinafter provided; the court shall further advise him of his right to be represented at said hearing by counsel of his choice, or if he has no choice, by competent counsel appointed by the court."

When the Patuxent report was received by the administrative judge of the Circuit Court for Montgomery County on 22 March 1974, he sent it to the Clerk of the Court with a memorandum showing the case numbers of the three criminal indictments and the notation: "Please file this report of Patuxent Institution in the above cases". The docket records that the report was filed on 28 March 1974. The next activity shown by the docket was a petition filed by the State's Attorney on 26 July 1974 for a Writ of Habeas Corpus ad Prosequendum, commanding the Sheriff of Montgomery County to bring Edward Arnold Moss before the court on 29 July 1974 for the purpose of a "Rights Hearing". On the same date the court ordered the issuance of the writ as prayed. Also on the same date the appearance of an attorney for Moss, assigned on 23 July 1974 by the office of the Public Defender, was entered. The docket shows that on 29 July 1974 Moss appeared before the court with his counsel and was advised of his rights. He asked for a jury. On that date the case was set for hearing before a jury on 19 September 1974. Appellant's brief tells us that he waived his right to a hearing within thirty days, as required by Art. 31B, § 8 (c) [1],

---

1. Section 8 (c) does not require that the hearing be held *within* thirty days. On the contrary, it requires that the hearing "shall be held *no less than* thirty days following designation of counsel, unless acceleration of the time is requested by the person or his counsel." (Emphasis added).

and requested hearing after 15 September 1974 so that he could arrange for an examination of the appellant by a psychiatrist of his own choice.

On 6 August 1974 the appellant filed a "Motion to Dismiss Petition", alleging that he had been denied due process of law because he was not brought before the court "forthwith" as required by the statute. He alleged that he "was greatly prejudiced", but the motion identified no prejudice. The motion was heard and denied at the outset of the hearing on 10 April 1975.

On 10 September 1974 appellant filed a motion for a continuance of the hearing then set for 19 September, on the ground that the psychiatrist who had been retained to examine Moss had been unable to make his examination and prepare his report.

On 17 September 1974 the court, upon consideration of the motion for continuance, ordered "that the trial in this matter be, and it hereby is, continued until the 10th day of April, 1975, by consent of the State's Attorney and Defense Counsel." [2]

The hearing was commenced on 10 April 1975 and concluded on 14 April 1975, with the jury's finding that the defendant was a defective delinquent. The order appealed from was entered on the same day.

Appellant argues, with considerable persuasive force, that the requirement of Art. 31B, § 8 (a) that "the court shall forthwith summon the person before it and advise him" of the report, the pendency of the hearing, and his right to counsel, is not merely directory, but is and must be construed and applied as mandatory. He argues further that the failure of the court to obey the mandate of the statute

---

2. The phrase in the order referring to consent, following the date, is handwritten, apparently added after the typewritten form of order was prepared. In appellant's brief, his counsel says that the order was modified without his consent or approval. He also says that he "submitted to the April 10, 1975, date in order to establish a date certain for trial". No effort was made below to correct any "error" in the order. Consent, whether enthusiastic or reluctant, is nevertheless consent. We take the order as it appears in the record.

amounts to a denial of due process, and that the circumstances here do not demonstrate a lack of prejudice.

Our attention is called to the ruling of this Court in *Marsh v. State,* 22 Md. App. 173, 322 A. 2d 247 (1974), at 181, that:

"It is clear that the section [§ 8 (a)] mandates arraignment, appointment of counsel and hearing upon receipt by the court of a report from Patuxent that an inmate is a defective delinquent."

We also said in *Marsh,* at 182:

"We hold that § 8 becomes effective whenever Patuxent's written report commanded by § 7(a) declares that a patient is a defective delinquent. Upon the filing of such a report the patient named therein forthwith is entitled to the rights granted by subsections (b) and (c) of § 8. Under such circumstances, those rights may not be deferred because of an alleged failure of the inmate to submit to personal examinations."

The appeal in *Marsh* was from an order holding appellant in contempt for his refusal to submit to a subsequent examination after Patuxent had already filed its report of the opinion and finding of its staff.

Appellant also cites *Lawless v. Director,* 27 Md. App. 453, 340 A. 2d 756 (1975), in which we quoted from the opinion of the Court of Appeals in *Weeder v. State,* 274 Md. 626, 337 A. 2d 67 (1975), referring to the examination at Patuxent as being "mandated" by Art. 31B, § 7 (a).

The State argues that it is directory, and cites *Director v. Cash,* 269 Md. 331, 305 A. 2d 833 (1973), *cert. den. sub nom. Vucci v. Boslow,* 414 U. S. 1136 (1974). In that case the Court of Appeals held that the specific time requirements of § 7 (a) were directory rather than mandatory. It noted that the statute provided no penalty for any failure to act within the time prescribed.

We see little to be gained by attempting to classify § 8 (a) either as "mandatory" or as "directory". We are not dealing

here with a specific time or period of time specified by statute, nor with any prescribed penalty or sanction.[3] Due process of law is always required. The purpose of due process, in this particular context, was discussed by the United States Court of Appeals for the Fourth Circuit in *Sas v. State of Maryland*, 334 F. 2d 506 (1964), which was quoted by Judge Hammond in his opinion for the Court of Appeals in *Director v. Daniels*, 243 Md. 16, 221 A. 2d 397 (1966). The Court of Appeals commented, at 25:

> "The *Sas* appellate court thereupon had a further caveat, in spite of the facially adequate procedural safeguards of the Act which it had recognized, whether 'in application these safeguards result in basic fairness of procedure imposed upon the state by the fourteenth amendment.' "

There can be no doubt that § 8 (a) contains an absolute requirement that a person reported by Patuxent Institution to be a defective delinquent must be brought before the court and advised as the statute requires. That was done in the present case. Only the word "forthwith" is significant to the asserted denial of due process.

In *Ervin v. Beland*, 251 Md. 612, 617, 248 A. 2d 336 (1968), the Court of Appeals had occasion to interpret the word "forthwith" as used in what was then § 115 of the Motor Vehicle Law providing for service upon a non-resident defendant. Section 115 required the plaintiff to send registered mail notice to the defendant forthwith. In *Ervin* the notice was not sent until nine months after suit was filed. The Court held the notice "failed by far to meet the statutory requirement" and that the delay "amounted to an irregularity in the proceedings which went to the jurisdiction of the court. As a result, the court lacked power to proceed to judgment. [citations omitted]". The Court, at

---

**3.** Examples of a clear statutory sanction are found in Art. 27, §§ 616D and 616S, under which certain untried indictments must be dismissed with prejudice when the prescribed time requirements are not met.

617, cited Black's Law Dictionary (3d. ed. 1933) definition of "forthwith":

"As soon as, by reasonable exertion, . . . a thing may be done. Thus, when a defendant is ordered to plead forthwith, he must plead within twenty-four hours. When a statute enacts that an act is to be done 'forthwith' it means that the act is to be done within a reasonable time".

The Court went on to state:

"Our predecessors, in considering the meaning of the term 'forthwith', as used in the notice requirement of an insurance policy, have held it to mean ' * * * with due diligence, or without unnecessary procrastination or delay, under all the circumstances of the case.' *Edwards v. Balto. Fire Ins. Co.*, 3 Gill 176 at 188 (1845). In the context of service under non-resident automobilist statutes, 'forthwith' does not mean instantaneously, but 'with all reasonable dispatch consistent with the circumstances or with due diligence under all the circumstances.' *Hatch v. Hooper*, 101 N. H. 214, 138 A. 2d 671, 673 (1958). Consequently, a delay of three days has been held to be permissible, *Devier v. George Cole Motor Co.*, 27 F. Supp. 978 (D. Va. 1939), but delays of 25 days, *Weir v. Devine*, 48 Del. (9 Terry) 102, 98 A. 2d 778 (Super. Ct. Del. 1953) and of three months, *McLean Trucking Co. v. Stover*, 47 Del. (8 Terry) 110, 87 A. 2d 879 (Super. Ct. Del. 1951) have been held to invalidate the service. We conclude that Ervin's notice, even had it been good in other respects, failed by far to meet the statutory requirement."

We hold that in the context of Art. 31B, § 8 (a), "forthwith" does not mean instantaneous, but it does mean with all reasonable dispatch consistent with the circumstances. The State offered no explanation, to the hearing judge below, or in this Court, for the lapse of four

months between the receipt of Patuxent's report and the initiation of steps to comply with § 8 (a). Under the circumstances, the court did not act forthwith. When the statute says what "the court" shall do, we do not take it to mean specifically a judge, any more than it means the State's Attorney, or the clerk. The responsibility is shared by all.

The report was sent by the judge to the clerk. Copies of the report were sent by Patuxent to the State's Attorney at the same time it was sent to the judge. Someone should have acted forthwith. Nobody did. It is imperative that there be an established procedure to assure prompt compliance with § 8 (a). When there is a procedure, it is imperative that it be followed. Failure to follow it could result in a denial of due process of law.

Due process is not, however, evaluated in a vacuum. Its purpose is to assure basic fairness of procedure. If a departure from procedure results in unfairness, it may be said to deny due process. If no unfairness results, there is no denial of due process.

There is not in this case even the slightest indication of unfairness or prejudice to Moss because the "rights hearing" was not held sooner. The hearing was held less than nine months after Moss was sentenced to serve 15 years. He requested additional time before the determination hearing. He later requested and was granted a further continuance. There was no denial of due process of law.

### The Requested Instruction Was Properly Denied

At the hearing appellant asked the court to instruct the jury that

> "If you should find that the Defendant is not a defective delinquent, he will be transferred to the Department of Correction to serve out the remainder of his sentence."

Exception was taken to the court's refusal to give the instruction.

The requested instruction was irrelevant. The sole issue to be determined by the jury was whether Moss was a defective delinquent, as defined by the statute. *Hammond v. Director*, 229 Md. 643, 184 A. 2d 628 (1962); *Cannady v. Director*, 23 Md. App. 432, 327 A. 2d 785 (1974); *Bush v. Director*, 22 Md. App. 353, 324 A. 2d 162 (1974).

### Request to Judge to Disqualify Himself

At the beginning of the determination hearing appellant reminded the judge that he had been a member of the sentence review panel which had considered an application by Moss for review of his sentences in the criminal cases. The judge's refusal to disqualify himself from presiding over the jury hearing was a proper exercise of his discretion, and did not constitute error. *Napier v. Director*, 232 Md. 654, 194 A. 2d 277 (1963).

*Order affirmed.*